1    SCOTT SUMMY (pro hac vice pending)
    JOHN P. FISKE (SBN 249256)
2    **BARON & BUDD, P.C.**
    11440 West Bernardo Court, Suite 265
3    San Diego, CA 92127
    Tel: 858.251.7424
4    Email: jfiske@baronbudd.com

5    ED DIAB (SBN 262319)
    DEBORAH S. DIXON (SBN 248965)
6    ROBERT J. CHAMBERS II (SBN 244688)
    **DIXON DIAB & CHAMBERS LLP**
7    501 W. Broadway, Suite 800
    San Diego, CA 92101
8    Tel: 619.354.2662
    Email: diab@theddcfirm.com
9         ddixon@theddcfirm.com
         rob@theddcfirm.com
10

11    Attorneys for Plaintiffs

**FILED**
Superior Court of California
County of Los Angeles

JAN 19 2021

Sherri R. Carter, Executive Officer/Clerk of Court
By_____ S. DREW _____ Deputy

12          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13            **IN AND FOR THE COUNTY OF LOS ANGELES**

14

15    COUNTY OF MONO, a political subdivision of
the State of California; ANTELOPE VALLEY
16    FIRE PROTECTION DISTRICT, a special
district; TOIYABE INDIAN HEALTH
17    PROJECT, INC., a California corporation; and
BRIDGEPORT INDIAN COLONY,
18

19           Plaintiffs,

20           v.

21    LIBERTY UTILITIES (CALPECO ELECTRIC),
LLC; ALGONQUIN POWER & UTILITIES
22    CORP.; and DOES 1 THROUGH 50,
INCLUSIVE,
23

24           Defendants.

Case No.: _____ **21STCV01855**

**COMPLAINT AND JURY DEMAND**

1. **INVERSE CONDEMNATION**
2. **NEGLIGENCE**
3. **NUISANCE**
4. **PREMISES LIABILITY**
5. **TRESPASS**
6. **NEGLIGENCE PER SE**
7. **VIOLATION OF PUBLIC UTILITIES CODE §2106**
8. **VIOLATION OF HEALTH & SAFETY CODE §§13007, et seq.**
9. **VIOLATION OF HEALTH & SAFETY CODE §§13009, et seq.**

25

26

27

28

1

COMPLAINT AND JURY DEMAND

1    Plaintiffs COUNTY OF MONO, a political subdivision of the State of California; ANTELOPE
2  VALLEY FIRE PROTECTION DISTRICT, a special district; TOIYABE INDIAN HEALTH
3  PROJECT, INC., a California Corporation, and BRIDGEPORT INDIAN COLONY (hereinafter
4  collectively referred to as "Plaintiffs") by and through undersigned counsel, allege that at all pertinent
5  times herein upon information and belief as follows:

6                                            **INTRODUCTION**

7    1.    Plaintiffs bring this action for damages against Defendants LIBERTY UTILITIES
8  (CALPECO ELECTRIC), LLC and ALGONQUIN POWER & UTILITIES CORP. (collectively,
9  "LIBERTY UTILITIES" or the "LIBERTY UTILITIES DEFENDANTS"), and DOES 1through 50,
10 inclusive, for damages they suffered arising out of a fire which started at approximately 12:00 p.m. on
11 November 17, 2020 near the Mountain View Barbeque in Coleville, California.  This fire has since been
12 named the "Mountain View Fire".

13   2.    The Mountain View Fire affected Mono County and the towns of Coleville, Walker and
14 Topaz.  The fire burned over 20,000 acres and destroyed almost 100 structures.

15   3.    The map below, found at https://inciweb.nwcg.gov/incident/maps/7270/, shows the fire
16 perimeter of the Mountain View Fire:



17
18
19
20
21
22
23
24
25
26
27
28

2

COMPLAINT AND JURY DEMAND

4.      Plaintiffs are informed and believe, and thereon allege, that the Mountain View Fire started when a live conductor on a power line owned, operated and maintained by the Liberty Utilities Defendants broke, fell onto dry vegetation and ignited a fire that grew to over 20,000 acres.

5.      Plaintiffs are among those damaged by the Mountain View Fire. Each Public Entity Plaintiff seeks just compensation and damages as more particularly described below.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over this matter pursuant to California Code of Civil Procedure § 395(a) because the damages to property claimed by Plaintiffs occurred in this county, and at all times relevant, Defendants have conducted significant business in the State of California, so as to render the exercise of jurisdiction over Defendants by California courts consistent with the traditional notions of fair play and substantial justice.

7.      Venue is proper in Los Angeles County pursuant to California Code of Civil Procedure section 394. Venue is also proper because the action is complex and subject to complex determination and appropriate and suitable for a complex department.

8.      The amount in controversy exceeds the jurisdictional minimum of this Court.

**THE PARTIES**

A.      **PLAINTIFFS**

9.      Plaintiffs are various public entities and other plaintiffs that suffered and/or continue to suffer property losses and other damages from the Mountain View Fire.

B.      **DEFENDANTS**

10.     At all times herein mentioned the LIBERTY UTILITIES DEFENDANTS and DOES 1-50 are corporations (or, in the case of the DOE Defendants, private individuals, associations, partnerships or corporations) authorized to do business, and doing business, in the State of California, with their place of business in or around Tahoe Vista, El Dorado County, California.

11.     Defendant LIBERTY UTILITIES CO. provides public utility services that include the transmission and distribution of electricity to customers in Mono County.

12.     ALGONQUIN POWER & UTILITIES CORP is the parent company of LIBERTY UTILITIES CO.

3

13.     Plaintiffs are informed and believe, and thereon allege, that the LIBERTY UTILITIES
DEFENDANTS are jointly and severally liable for each other's negligence, misconduct, and wrongdoing
as alleged herein, in that:

      a.     ALGONQUIN POWER & UTILITIES CORP and LIBERTY UTILITIES operate
as a single business enterprise operating out of the same building located at 933
Eloise Avenue, South Lake Tahoe, CA for the purpose of effectuating and carrying
out ALGONQUIN POWER & UTILITIES CORP's business and operations
and/or for the benefit of ALGONQUIN POWER & UTILITIES CORP;

      b.     The LIBERTY UTILITIES DEFENDANTS do not operate as completely separate
entities, but rather, integrate their resources to achieve a common business
purpose;

      c.     LIBERTY UTILITIES is so organized and controlled, and its decisions, affairs,
and business so conducted as to make it a mere instrumentality, agent, conduit, or
adjunct of ALGONQUIN POWER & UTILITIES CORP;

      d.     LIBERTY UTILITIES' income contribution results from function integration,
centralization of management and economies of scale with ALGONQUIN
POWER & UTILITIES CORP;

      e.     The LIBERTY UTILITIES DEFENDANTS' officers and management are
intertwined and do not act completely independent of one another;

      f.     The LIBERTY UTILITIES DEFENDANTS' officers and managers act in the
interest of ALGONQUIN POWER & UTILITIES CORP as a single enterprise;

      g.     ALGONQUIN POWER & UTILITIES CORP has control and authority to choose
and appoint LIBERTY UTILITIES' board members as well as its other top
officers and managers;

      h.     The LIBERTY UTILITIES DEFENDANTS do not compete with one another, but
have been structured and organized and their business effectuates so as to create a
synergistic, integrated, single enterprise where various components operate in
concert with each other;

i.   ALGONQUIN POWER & UTILITIES CORP maintains unified administrative control over LIBERTY UTILITIES;

j.   The LIBERTY UTILITIES DEFENDANTS are insured by the same carriers and provide uniform or similar pension, health, life, and/or disability insurance plans for employees;

k.   The LIBERTY UTILITIES DEFENDANTS invest these funds from their programs and plans by a consolidated and/or coordinated Benefits Committee controlled by ALGONQUIN POWER & UTILITIES CORP and/or administered by common trustees and administrators;

l.   The LIBERTY UTILITIES DEFENDANTS invest these funds from their programs and plans by a consolidated and/or coordinated Benefits Committee controlled by ALGONQUIN POWER & UTILITIES CORP and/or administered by common trustees and administrators;

m.   The LIBERTY UTILITIES DEFENDANTS have unified personnel policies and practices and/or a consolidated personnel organization or structure;

n.   The LIBERTY UTILITIES DEFENDANTS have unified accounting policies and practices dictated by ALGONQUIN POWER & UTILITIES CORP and/or common or integrated accounting organizations or personnel;

o.   The LIBERTY UTILITIES DEFENDANTS are represented by common legal counsel;

p.   ALGONQUIN POWER & UTILITIES CORP's officers, directors, and other management make policies and decisions to be effectuated by LIBERTY UTILITIES and/or otherwise play roles in providing directions and making decisions for LIBERTY UTILITIES;

q.   ALGONQUIN POWER & UTILITIES CORP's officers, directors, and other management direct certain financial decisions for LIBERTY UTILITIES including the amount and/or nature of capital outlays;

COMPLAINT AND JURY DEMAND

r.      ALGONQUIN POWER & UTILITIES CORP's written guidelines, policies, and procedures control LIBERTY UTILITIES, its employees, policies, and practices;

s.      ALGONQUIN POWER & UTILITIES CORP files consolidated earnings statements factoring all revenue and losses from LIBERTY UTILITIES as well as consolidated tax returns, including those seeking tax relief; and

t.      ALGONQUIN POWER & UTILITIES CORP generally directs and controls LIBERTY UTILITIES' relationship with, requests to, and responses to inquiries from the California Public Utilities Commission and uses such direction and control for the benefit of ALGONQUIN POWER & UTILITIES CORP.

14.      The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants DOES 1 through 50, are unknown to Plaintiffs who, under Code of Civil Procedure § 474, sue these DOE Defendants under fictitious names. Plaintiffs will amend this complaint to show the true names and capacities of DOE Defendants when they are ascertained. Each of the DOE Defendants is in some manner legally responsible for the occurrences alleged in this Complaint, and Plaintiffs' damages as alleged were legally caused by each of those DOE Defendants.

15.      At all relevant times, each of the Defendants were the partners, principals, agents, employees, servants, and joint venturers of each other, and in doing the things alleged in this Complaint were acting within the course and scope of their authority and relationship as partners, principals, agents, employees, servants, and joint venturers with the permission, knowledge, and consent of each other.

## **THE FACTS**

**A.      GENERAL BACKGROUND**

16.      The Mountain View Fire started at approximately 12:00 p.m. on November 17, 2020. Plaintiffs are informed and believe, and thereon allege, that the fire started when a conductor on an electrical distribution line owned, operated and maintained by LIBERTY UTILITIES broke, fell to the ground and ignited surrounding dry vegetation.



(*Photograph of the broken distribution line at issue*)



(*Photograph of the broken end of the distribution line at issue*)

COMPLAINT AND JURY DEMAND

17. The Mountain View Fire started along Highway 395, just west of a local restaurant called the Mountain View Barbeque. Plaintiffs are informed and believe, and thereon allege, that the origin area is provided power by LIBERTY UTILITIES – and specifically, through the "Liberty Circuit."

18. The Mono County Sheriff's department "tweeted" earlier in the day on the same day of the fire that due to the forecasted high winds, there would be possible Public Safety Power Shutoffs in Mono County.





19. As predicted, the dry winds arrived in full force on November 17, 2020 and several warnings were issued in the surrounding areas. Despite being warned of extremely critical fire conditions, the LIBERTY UTILITIES DEFENDANTS left their power lines energized despite other utility companies serving the same area shutting their power off. As set forth herein, and on November 17, 2020, one of LIBERTY UTILITIES' energized distribution lines broke, sparking a fire that was fueled

8

by the dry and windy conditions.  Ultimately, this led to over 20,000 acres burned and almost 100 structures being destroyed.

20.    Plaintiffs are further informed and believe, and thereon allege, that an electrical event occurred on LIBERTY UTILITIES' circuit which provides electricity to Coleville and Walker, which resulted in the loss of electricity to customers of the same area prior to the fire.  At approximately 11:48 am on November 17, 2020, LIBERTY UTILITIES notified members of the community via a text alert that power had been restored to "Coleville-Topaz."  Approximately 16 minutes after LIBERTY UTILITIES re-energized its circuit, the Mountain View fire ignited.

**B.      THE LIBERTY UTILITIES DEFENDANTS HAD A NON-DELEGABLE, NON-TRANSFERABLE DUTY TO SAFELY MAINTAIN ITS ELECTRICAL INFRASTRUCTURE**

21.    At all times, LIBERTY UTILITIES had a non-delegable, non-transferable duty to properly construct, inspect, maintain, repair, manage and/or operate its electrical conductors, utility poles and appurtenant equipment and to prevent its overhead electrical equipment from igniting a wildfire.

22.    In the construction, inspection, repair, maintenance, ownership, and/or operation of its power lines, utility poles and other electrical equipment, LIBERTY UTILITIES had an obligation to comply with a number of statutes, regulations, CPUC General Orders and standards, as detailed below.

23.    LIBERTY UTILITIES is required to comply with a number of design standards for its electrical equipment, as stated in CPUC General Order 95. In high-risk fire areas, LIBERTY UTILITIES must also ensure that its power lines and utility poles can withstand winds of up to 92 miles per hour. Further, LIBERTY UTILITIES must follow several standards to protect the public from the consequences of vegetation and/or trees from coming into contact with its power lines and other electrical equipment. Pursuant to Public Resources Code § 4292, LIBERTY UTILITIES is required to "maintain around adjacent to any pole or tower which supports a switch, fuse, transformer, lighting arrester, line junction, or dead end or comer pole, a firebreak which consists of clearing not less than 10 feet in each direction from the outer circumference of such pole or tower." Also, Public Resources Code § 4293 mandates LIBERTY maintain clearances of 4 to 10 feet for all of its power lines, depending upon their voltage. In addition, "[d]ead trees, old decadent or rotten trees, trees weakened by decay or disease and

9

trees or portions thereof that are leaning toward the line which may contact the line from the side or may fall on the line shall be felled, cut, or trimmed so as to remove such hazard."

24.    Further, pursuant to CPUC General Order 165, LIBERTY UTILITIES is also required to inspect its distribution facilities to maintain a safe and reliable electric system.  Specifically, LIBERTY UTILITIES must conduct "patrol" inspections of all of its overhead facilities annually in Extreme or High Fire areas, which includes Mono County.[1]  LIBERTY UTILITIES is also required to inspect wood utility poles once the poles have been in service for 15 years, with intrusive inspections of the poles themselves within ten years.[2]

25.    LIBERTY UTILITIES knew or should have known that such standards and regulations were minimum standards and that LIBERTY UTILITIES has a duty to identify vegetation and trees which posed a foreseeable hazard to overhead power lines and/or other electrical equipment, and to manage the growth of vegetation near its utility poles and power lines so as to prevent the foreseeable danger of contact between the vegetation and/or trees and power lines starting a fire.

**C.    FORESEEABLE AND EXPECTED HIGH WINDS WARNING**

26.    At all times mentioned herein, Defendants were aware that the State of California had been in a multi-year period of drought. Defendants were also aware that portions of Mono County frequently experience high wind, low humidity conditions, which are highly conducive to the rapid spread of wildfires and extreme fire behavior. Such winds are not abnormal or unforeseeable, and everyone who lives and works in the Eastern Sierra is familiar with this type of extreme wind event.

27.    On January 17, 2014, the Governor issued an Executive Order proclaiming a State of Emergency throughout the State of California due to severe drought conditions which had existed for four years.  On November 13, 2015, the Governor issued Executive Order B-36-15, which proclaimed "[t]hat conditions of extreme peril to the safety of persons and property continue to exist in California due to water shortage, drought conditions and wildfires…."[3]  Although the Governor issued an Executive

---

[1] PUC GO 165, Table  1, http://www.cpuc.ca.gov/gos/GO165/GO_165_table.html
[2] A Brief Introduction To Utility Poles, PUC, at p. 10,
http://www.cpuc.ca.gov/uploadedFiles/CPUC_Public_Website/Content/About_Us/Organization/Divisions/Policy_and_Planning/PPD_Work/PPDUtilityPole.pdf
[3] Exec. Order B-36-15, Office of Gov. Edmund Brown, Jr. (Nov. 13, 2015).

1   Order in April 2017 ending the Drought State of Emergency in all counties except Fresno, Kings, Tulare

2   and Tuolumne, the declaration directed state agencies "to continue response activities that may be needed

3   to manage the lingering drought impacts to people and wildlife." [4]

4        28.     According to records maintained by Cal Fire, electrical equipment was tied as the third

5   leading cause of wildfires in California during 2014, the latest year such statistics have been published.[5]

6   Thus, LIBERTY UTILITIES knew of the foreseeable danger of wildfire when its power lines came into

7   contact with vegetation.

8        29.     LIBERTY UTILITIES has admitted in its Public Safety Power Shutoff statement that all

9   its service areas – including Mono County – have been designated either "High" or "Very High" Fire

10  Hazard Severity Zones by Cal Fire, "meaning that the possibility of a wildfire is at an elevated risk due

11  to our region's environment and likelihood to burn."

12       30.     LIBERTY UTILITIES was therefore put on notice well in advance of the Mountain View

13  Fire of the elevated fire risk in Mono County for ignition and rapid spread of power line fires due to

14  strong winds, abundant dry vegetation, and/or other environmental conditions.

15       31.     On November 8, 2017, the CPUC published its "Proposed Decision Of Commissioner

16  Picker", which adopted the "Decision Adopting Regulations To Enhance Fire Safety In The High Fire-

17  Threat District". This Decision adopted new regulations by the CPUC to enhance fire safety of overhead

18  electrical power lines and communications lines located in high fire-threat areas following the devastating

19  Northern California fires.

20       32.     On or around November 16, 2020, a High Winds warning was issued for portions of

21  California, including in Mono County.

22       33.     The CPUC has authorized LIBERTY UTILITIES and other utilities to temporarily shut

23  down power grids in high fire-threat areas to prevent wildfire. However, despite knowledge of the risk,

24  LIBERTY UTILITIES failed to shut off circuits, including those in Mono County which resulted in the

25  ignition of the Mountain View Fire.

26

27    [4] Exec. Order B-040-17 at 3, Office of Gov. Edmund Brown, Jr. (April 7, 2017).

28    [5] Historical Wildfire Activity Statistics (Redbooks), Cal Fire, available at
http://www.fire.ca.gov/fire_protection/fire_protection_fire_info_redbooks_2014

34.     LIBERTY UTILITIES knew of the catastrophic damage which could occur when its electrical equipment sparked a wildfire in a high fire risk area during high wind events yet despite this knowledge, LIBERTY UTILITIES failed to take adequate precautions to prevent its equipment from sparking the Mountain View Fire.

### D.     PUBLIC ENTITY AND PLAINTIFF DAMAGES CLAIMED

35.     The Plaintiffs suffered injuries and damages including, but not limited to, the following potential categories of damages: loss of natural resources, open space, and public lands; loss of public parks; property damages including real and personal property; fire suppression costs including personnel, overtime labor costs, materials, and other fire suppression damages; evacuation expenses, economic damages such as loss of tax revenue including property, sales, and transient occupancy taxes; economic damages such as losses from impacts on business-like activities; costs associated with response and recovery including debris removal, emergency response, and other costs; damage to infrastructure including but not limited to roads, water, stormwater and sewer systems, and underground infrastructure, and other public entity-owned infrastructure; damages based on soil erosion and loss of soil stability and productivity; damages related to water contamination including water quality preservation and correction expenses; loss of water storage; loss of aesthetic value; and other significant damages and losses directly related to and caused by the Mountain View Fire.

36.     A further enumerated list of impacts to the Plaintiffs includes, but is not limited to, the following:

a.     Fire suppression costs;

b.     Administration, funding, and operation of emergency operations centers;

c.     Administration, funding, and operation of evacuation centers and shelters;

d.     Securing and managing burn areas, including safe re-entry for the public;

e.     Staff overtime, labor costs, personnel, and other materials;

f.     Additional law enforcement costs;

g.     Lost work and productivity due to public entity employees unable to return to work;

h.     Loss of natural resources, open space, wildlife, and public lands;

12

COMPLAINT AND JURY DEMAND

i.      Loss of parks, including damage to real property and to recreational opportunities and programs, and the revenue generated therefrom;

j.      Destruction or damage to public infrastructure, including but not limited to roads, sidewalks, water storage facilities, water distribution systems, sewer collection systems, stormwater systems, fire stations, and other infrastructure;

k.      Damage or harm to facility and infrastructure lifespan, including water treatment facilities and landfills;

l.      Costs of debris removal and related administrative obligations;

m.      Costs of facilitating/administering community rebuilding efforts, staffing and administration of permitting centers;

n.      Costs of administering community outreach efforts, including towards revisions to new ordinances, guidelines, and rules, and housing assistance programs and policies;

o.      Costs of watershed, waterway, and water body management and protection;

p.      Damages related to soil erosion and mitigation, loss of soil stability and productivity, including management of risk of debris flow and landslides;

q.      Damages related to water contamination, including water quality preservation and correction expenses, including but not limited to repair and/or replacement of water treatment facilities or systems;

r.      Economic damages including but not limited to loss of tax revenues such as property, sales, business, and transient occupancy taxes;

s.      Economic damages including but not limited to business like or proprietary revenues, facility rentals, educational and recreational programs and others;

t.      Economic damages from loss of workforce housing;

u.      Economic damages from damage to tourism and economic development, such as overall branding and reputation;

v.      Damages resulting from short and long term public health impacts, including costs to provide educational, outreach, and other services;

13

w.      Other impacts, injuries, and damages to public entities and plaintiffs.

37.      The Plaintiffs also suffered other injuries and damages not yet identified, including those unique to public entities in general.

**E.      DEFENDANTS' DUTY OF CARE**

38.      Defendants' duties included: (1) the duty to properly maintain and operate LIBERTY UTILITIES' power lines, as well as their electrical infrastructure and equipment, to ensure they would not become a source of fires; (2) the duty to adequately design, construct, monitor, operate, repair and maintain power lines, poles, transformers, and other equipment; and (3) the duty to maintain the land and vegetation around the power line infrastructure to ensure vegetation, objects and structures would not accelerate a fire started in the area by having dry brush and other, highly flammable vegetation in the area. Despite knowing their electrical infrastructure was inadequate, aging and/or vulnerable to foreseeable and known weather and environmental conditions, Defendants failed to fulfill their duties, including those described above.

39.      In addition, the LIBERTY UTILITIES DEFENDANTS had a duty to de-energize their power lines to prevent fires in the face of weather conditions they knew or should have known would create an extreme risk that their power lines would cause fires, and to allow first responders to travel the roads to put out fires in areas burning from fire ignited by those same power lines.

40.      Whether power was cut as a result of a proactive de-energization policy, or as a result of wind-related events that caused an unintentional de-energization event, the LIBERTY UTILITIES DEFENDANTS also had a duty to inspect the de-energized power lines before restoring power to ensure the cause of the downed lines was not power lines that had come into contact with vegetation which would ignite a certain fire upon re-energization of the lines. Re-energization where power has been cut contemporaneously with a severe wind event in a period of extreme fire hazard constitutes gross negligence, recklessness, and willful negligence.  Otherwise, re-energization where power has been cut without confirming the de-energized power lines were not in contact with vegetation that would ignite upon re-energization also constitutes gross negligence, recklessness, and willful negligence.

41.      Plaintiffs' losses were entirely preventable had the LIBERTY UTILITIES DEFENDANTS de-energized their lines proactively, and/or conducted proper inspections of downed

14

lines before commencing re-energization, and/or adequately maintained vegetation clearance surrounding their lines so as to mitigate risks of wildfire and ensure safe delivery of electricity. The practice of de-energizing power lines in times of high fire risk has become commonplace in areas accustomed to wildfires. Plaintiffs are informed and believe, and thereon allege, that other California utilities took such measures and de-energized their power lines during this time period, but the LIBERTY UTILITIES DEFENDANTS inexplicably chose not to.

42.     In sum, despite being well aware of the highly elevated fire danger in California November 17, 2020, Plaintiffs are informed and believe that the LIBERTY UTILITIES DEFENDANTS: (1) failed to shut off power lines they owned and operated in areas of California that were at elevated risk of wildfire; and (2) failed to inspect and address the failures in lines that had caused unintentional de-energization of such lines before re-energizing the lines. At a minimum, the LIBERTY UTILITIES DEFENDANTS failed to properly maintain their power lines which, during the predicted wind event, broke and ignited the surrounding vegetation.

### GENERAL ALLEGATIONS

### FIRST CAUSE OF ACTION

#### (Inverse Condemnation Against all Defendants)

43.     Plaintiffs incorporate and reallege each of the paragraphs above as though fully set forth herein.

44.     Plaintiffs bring this cause of action for Inverse Condemnation against LIBERTY UTILITIES.

45.     The LIBERTY UTILITIES' operation and maintenance of electrical transmission and distribution lines and supporting equipment ("Electrical System"), which was a substantial cause of Plaintiffs' damages, are a public improvement for a public use, and constitute an "Electrical plant" pursuant to California Public Utilities Code §217.

46.     Article 1, § 19 of the California Constitution states:

> Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of

15

money determined by the court to be the probable amount of just compensation.

47.     LIBERTY UTILITIES' design, development, construction, installation, control, management, maintenance, inspection, ownership and operation of its Electrical System constitutes a public improvement for a public use.

48.     On or about November 17, 2020, LIBERTY UTILITIES' Electrical System started the Mountain View Fire, which directly, substantially and legally resulted in the taking of Plaintiffs' private property and deprived them of the use and enjoyment of their property.

49.     On August 15, 2019, the Supreme Court of California published its holding for the *City of Oroville v. Superior Court* (7 Cal. 5th 1091). In that case, the Court articulated that a court assessing inverse condemnation liability must find more than just a causal connection between the public improvement and the damage to private property. In the Mountain View Fire, LIBERTY UTILITIES' Electrical System substantially caused Plaintiffs' damages and was more than just a causal connection.

50.     LIBERTY UTILITIES owned and substantially participated in the design, planning, approval, construction and operation of the Electrical System and public improvements for the supplying of electricity. LIBERTY UTILITIES exercised control and dominion over the said Electrical System and public improvements as a public project and public benefit.

51.     In *City of Oroville*, the Court requires a reviewing court to consider whether the inherent dangers of the public improvement as deliberately designed, constructed, or maintained materialized and were the substantial cause of the property damage.

52.     Electricity is a dangerous instrumentality that poses an inherent risk that requires the exercise of increased care and precaution commensurate with and proportionate to that increased danger so as to make the transport of electricity through the Electrical System safe under all circumstances and exigencies posed by the surrounding weather and vegetation to ensure maximum safety under all local conditions in the service area, including the risk of fire.

53.     LIBERTY UTILITIES deliberately designed its Electrical System to transport electricity from its powerplant to substations through high-voltage transmission lines for the purpose of providing electricity to the public. This includes LIBERTY UTILITIES' design of its Electrical System with

COMPLAINT AND JURY DEMAND

system protection devices, including but not limited to fuses, breakers and reclosers ("System Protection") to trip and stop the flow of electricity should an electrical overcurrent event occur. The inherent danger in Electricity and LIBERTY UTILITIES' design of its Electrical System materialized in an arcing event that caused the Mountain View Fire, which damaged Plaintiffs' Property. The circuitry and equipment that failed was owned and controlled by LIBERTY UTILITIES, and LIBERTY UTILITIES specifically would not allow the homeowners or members of the public to touch, work upon, alter or maintain any such Electrical System.

54.     LIBERTY UTILITIES deliberately constructed its Electrical System to transport electricity from its powerplant to substations through high-voltage transmission lines for the purpose of providing electricity to the public. This includes LIBERTY UTILITIES' construction of its Electrical System with System Protection to trip and stop the flow of electricity should an electrical overcurrent event occur. The inherent danger in Electricity LIBERTY UTILITIES' construction of its Electrical System materialized in an arcing/electrical event that caused the Mountain View Fire, which damaged Plaintiffs' Property.

55.     The Court in the *City of Oroville* articulates that "useful public improvements must eventually be maintained and not merely designed and built. So, the inherent risk aspect of the inverse condemnation inquiry is not limited to deliberate design or construct of public improvement. It also encompasses risks from maintenance or continued upkeep of the public work." (7 Cal. 5th 1091 at 1106). LIBERTY UTILITIES has a responsibility to maintain and continuously upkeep its Electrical System to ensure safe delivery of electricity to the public.

56.     LIBERTY UTILITIES designed and constructed its Electrical System to transport electricity from its powerplant to substations through high-voltage transmission lines for the purpose of providing electricity to the public. Electricity is a dangerous instrumentality and LIBERTY UTILITIES has a non-delegable duty to perform inspection and maintenance on its Electrical System. The inherent danger in LIBERTY UTILITIES failing to maintain, repair and/or replace the structural integrity of its Electrical System, including the transmission towers, materialized in an arcing/electrical event that caused the Mountain View Fire, which damaged Plaintiffs' Property.

17

57.     LIBERTY UTILITIES has a non-delegable duty to maintain and upkeep its Electrical System, including the System Protection so that should an electrical overcurrent event occur, its powerlines de-energize.  The inherent danger in LIBERTY UTILITIES failing to maintain and upkeep its Electrical System, including the System Protection, materialized in an arcing event, which ignited the Mountain View Fire that damaged Plaintiffs' Property.

58.     LIBERTY UTILITIES has a non-delegable duty to maintain and upkeep its Electrical System, which includes vegetation management around its Electrical System.  The inherent danger in LIBERTY UTILITIES failing to maintain and continuously upkeep the surrounding vegetation around its Electrical System materialized following an arcing event or one where the power line, itself, broke, which ignited ground vegetation and started the Mountain View Fire that damaged Plaintiffs' property.

59.     In acting in furtherance of the public objective of supplying electricity and as a direct, necessary and legal result of LIBERTY UTILITIES' Electrical System, as deliberately designed, constructed and maintained, on or about November 17, 2020, the Electrical System, including the power lines and/or other electrical equipment came in contact with vegetation and/or other live conductors after breaking and caused the Mountain View Fire that tore through and burned over 20,000 acres and took and did take property owned and/or occupied by Plaintiffs.

60.     The injury to Plaintiffs' Property was the inescapable and unavoidable consequence of LIBERTY UTILITIES' Electrical System as deliberately designed, constructed and maintained.  This damage was the necessary and probable result of LIBERTY UTILITIES' public improvement of supplying electricity.

61.     LIBERTY UTILITIES has special knowledge and expertise above that of a layperson that is required to perform safe structural integrity inspections and maintenance, and other safety inspections at, near and around its Electrical System.  Specifically, LIBERTY UTILITIES performed inspection and maintenance, near and upon the Electrical System near the Mountain View Fire general area of origin in the past and exercised dominion and control over its Electrical System.

62.     The policy justifications underlying inverse condemnation liability are that individual property owners should not have to contribute disproportionately to the risks from public improvements made to benefit the community as a whole.  Under the rules and regulations set forth by the California

Public Utilities Commission, amounts that Defendants must pay in inverse condemnation can be included in their rates and spread among the entire group of rate payers so long as they are otherwise acting as a reasonable and prudent manager of their Electrical System.

63. The conduct as described herein was a substantial factor in causing damage to a property interest protected by the Fifth Amendment of the U.S. Constitution and Article I, § 19, of the California Constitution and permanently deprived Plaintiffs of the use and enjoyment of their property. As a direct result of the "taking" of the property, Plaintiffs sustained damages in excess of the jurisdictional minimum of this Court. Pursuant to California Code of Civil Procedure section 1036, Plaintiffs are entitled to recover all litigation costs, expense and interest with regard to the compensation of damage to their property, including attorney's fees, expert fees, consulting fees and litigation costs.

## **SECOND CAUSE OF ACTION**

### **(Negligence against all Defendants)**

64. Plaintiffs hereby reallege and incorporate by reference each and every allegation contained above as though the same were set forth herein in full.

65. Plaintiffs bring this cause of action for negligence against all Defendants, and/or each of them.

66. Defendants, and/or each of them, as owners and/or controllers of the Electrical System, were under a duty codified in California Civil Code §1714(a), which states, in pertinent part:

> Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

67. Specifically, Defendants, and/or each of them, were under a duty to maintain the Electrical System in their possession in a reasonably safe condition.

68. At all relevant times, Defendants, and/or each of them, operated, controlled, and/or maintained the Electrical System.

69. At all times relevant, Defendants, and/or each of them, were required to own, design, control, possess, operate, install, construct, inspect, maintain, and manage the Electrical System, including the real estate, rights-of-way, easements, fixtures, conductors, devices, poles, conduits,

19

COMPLAINT AND JURY DEMAND

apparatus, parts, and equipment in accordance with all standards, laws, rules, regulations, and orders pertaining thereto.

70.    Defendants, and/or each of them, in connection with the production, sale, transmission, and distribution of electricity have a non-delegable duty, commensurate with and proportionate to the danger of transmitting power, to own, design, control, possess, construct, operate, install, inspect, maintain, and/or manage the Electrical System in a proper, reasonable, careful, and safe manner.

71.    The Mountain View Fire was a direct and legal result of the negligence, carelessness, recklessness, and/or unlawfulness of Defendants, and/or each of them. Defendants, and/or each of them, breached their respective duties owed individually and/or collectively to Plaintiffs by, including but not limited to: (1) failing to comply with the applicable statutory, regulatory, and/or professional standards of care; (2) failing to timely and properly maintain, manage, inspect, and/or monitor the subject power lines, electrical equipment, and/or adjacent vegetation; (3) failing to make the overhead lines safe under all the exigencies created by surrounding circumstances and conditions; (4) failing to conduct adequate, reasonably prompt, proper, effective, and/or frequent inspections of the electrical transmission lines, wires, and/or associated equipment; (5) failing to design, construct, monitor, and/or maintain high voltage electrical transmission, and/or distribution power lines in a manner that avoids the potential to ignite a fire during long, dry seasons; (6) failing to install the equipment necessary and/or to inspect and repair the equipment installed, to prevent electrical transmission and distribution lines from improperly sagging, operating, and/or making contact with other metal wires placed on its poles and igniting fires; (7) failing to keep equipment in a safe condition and/or manage equipment to prevent fire at all times; (8) failing to de-energize power lines during fire prone conditions; (9) failing to de-energize power lines after the fire's ignition; (10) failing to properly train and to supervise employees and agents responsible for maintenance and inspection of the transmission lines and/or vegetation areas nearby these lines and/or (11) violating Health & Safety Code § 13007 by allowing fire to be set to the property of another.

72.    As a direct and legal result of the Defendants' actions and/or omissions, Plaintiffs have suffered damages including, but not limited to real property damage, loss of personal property, including loss of vegetation, trees and structures, economic loss, loss of quiet use and enjoyment of their property, and costs to evacuate and relocate.

20

COMPLAINT AND JURY DEMAND

73.     As a further direct and legal result of the Defendants' actions and/or omissions, Plaintiffs have incurred and will continue to incur expenses and other economic damages related to the damage to property, including costs relating to storage, clean-up, disposal, repair, depreciation, and/or replacement of their property, and/or other related consequential damages.

74.     The Mountain View Fire was the result of Defendants' practice of prioritizing profits over safety, wherein they failed to properly maintain and inspect their power lines knowing that the likely result was a fire that would pose risk of serious injury and/or death, and damage to property.

75.     LIBERTY UTILITIES has a virtual monopoly over the transmission and distribution of electrical power to the areas affected by the Mountain View Fire and has individual contracts with all residents and businesses in those areas to whom it distributes that electrical power.  The communities affected by the Mountain View Fire are all dependent upon the safe transmission and distribution of that electrical power for continuous residential and commercial usage, and LIBERTY UTILITIES has contractual, statutory, and public duties to provide that electrical power in a manner that promotes those individual and public interests.

76.     The potential harms to the Plaintiffs' property from wildfires such as the Mountain View Fire were objectively foreseeable both in nature and in scope and were subjectively known to LIBERTY UTILITIES from its long and tragic history of causing such wildfires.

77.     As a direct and proximate result of the aforesaid conduct, the Plaintiffs' suffered damages which were proximately and substantially caused by the Mountain View Fire, resulting in evacuations and relocations, and the cost to repair and replace their damaged and/or destroyed real and personal property.

78.     Public policy supports finding a duty of care in this circumstance due to Defendants' violation of California Civil Code §§ 3479, 3480, Public Utilities Code § 2106 and Health & Safety Code § 13007.

### THIRD CAUSE OF ACTION

### (NUISANCE AGAINST ALL DEFENDANTS)

79.     Plaintiffs hereby re-allege and incorporate by reference each and every allegation contained above as though the same were set forth herein in full.

COMPLAINT AND JURY DEMAND

80.     Defendants' actions, conduct, omissions, negligence, trespass, and failure to act resulted in a fire hazard and a foreseeable obstruction to the free use of Plaintiffs' property, invaded the right to use the Plaintiffs' property and interfered with the enjoyment of Plaintiffs' property, causing Plaintiffs to suffer unreasonable harm and substantial actual damages constituting a nuisance, pursuant to Civil Code §§ 3479, 3480 and 3481.

81.     Plaintiffs did not consent, expressly or impliedly, to the wrongful conduct of Defendants, and/or each of them, in acting in the manner set forth above.

82.     As a further direct and legal result of the conduct of Defendants, and/or each of them, Plaintiffs have suffered, and will continue to be harmed by the interference with Plaintiffs' occupancy, possession, use and/or enjoyment of their property, as alleged above.

83.     A reasonable, ordinary person would be reasonably annoyed or disturbed by the condition created by Defendants, and/or each of them, and the resulting fire.

84.     The conduct of Defendants, and/or each of them, is unreasonable and the seriousness of the harm to the public, including Plaintiffs herein, outweighs the social utility of Defendants' conduct.

85.     As a direct and proximate result of the conduct of Defendants and the resultant fire, Plaintiffs incurred significant and actual damages, as described herein and in an amount to be proven at trial.

86.     The hazardous conditions that were created by and/or permitted to exist by Defendants, and/or each of them, affected a substantial number of people within the general public, including Plaintiffs herein, and constituted a public nuisance under Civil Code §§ 3479, 3480 and 3481 and Public Resources Code § 4171.  Further, the ensuing uncontrolled wildfire constituted a public nuisance under Public Resources Code § 4170.

87.     The conduct of Defendants, and/or each of them, set forth above constitutes a public nuisance within the meaning of Civil Code §§ 3479 and 3480, Public Resources Code §§ 4104 and 4170, and Code of Civil Procedure § 731.  Under Civil Code § 3493, Plaintiffs have standing to maintain an action for public nuisance because the nuisance is especially injurious to Plaintiffs because, as more specifically described above, it is injurious and/or offensive to the senses of the Plaintiffs, unreasonably interferes with the comfortable enjoyment of their properties, and/or unlawfully obstructs the free use, in

1    the customary manner, of Plaintiffs' properties, and have suffered harm, injury, and damages.

2         88.    The Plaintiffs suffered injuries and damages including, but not limited to, the following

3    potential categories of damages: loss of natural resources, open space, and public lands; loss of public

4    parks; property damages including real and personal property; fire suppression costs including

5    personnel, overtime labor costs, materials, and other fire suppression damages; evacuation expenses,

6    economic damages such as loss of tax revenue including property, sales, and transient occupancy taxes;

7    economic damages such as losses from impacts on business like activities; costs associated with

8    response and recovery including debris removal, emergency response, and other costs; damage to

9    infrastructure including but not limited to roads, sidewalks, water, stormwater and sewer systems, and

10   underground infrastructure, and other public entity-owned infrastructure; damages based on soil erosion,

11   and loss of soil stability and productivity; damages related to water contamination including water

12   quality preservation and correction expenses; loss of water storage; loss of aesthetic value; and other

13   significant injuries, damages, and losses directly related to and caused by the fire.

14        89.    The Plaintiffs suffered other injuries and damages yet identified including those unique to

15   the Plaintiffs.

16        90.    Further, the conduct alleged against Defendants in this Complaint was despicable and

17   subjected Plaintiffs to cruel and unjust hardship in conscious disregard of their rights, constituting

18   oppression, for which Defendants must be punished by punitive and exemplary damages in an amount

19   according to proof.  Defendants' conduct was carried on with a willful and conscious disregard of the

20   rights and safety of Plaintiffs, constituting malice, for which Defendants must be punished by punitive

21   and exemplary damages according to proof.  An officer, director, or managing agent of Defendants

22   personally committed, authorized and/or ratified the despicable and wrongful conduct alleged in this

23   Complaint.

### FOURTH CAUSE OF ACTION

### (PREMISES LIABILITY AGAINST ALL DEFENDANTS)

26        91.    Plaintiffs incorporate and re-allege by this reference, each of the paragraphs set forth as

27   though fully set forth herein.

28        92.    Defendants, and/or each of them, were the owners of an easement and/or real property in

23

the area of the origins of the Mountain View Fire, and/or were the owners of the power lines upon said easement(s) and/or right(s) of way.

93.    Defendants, and/or each of them, acted wantonly, unlawfully, carelessly, recklessly, and/or negligently in failing to properly inspect, manage, maintain, and/or control the vegetation near its power lines along the real property and easement(s), allowing an unsafe condition presenting a foreseeable risk of fire danger to exist on said property.

94.    As a direct and legal result of the wrongful acts and/or omissions of Defendants, and/or each of them, Plaintiffs suffered, and continue to suffer, the injuries and damages as set forth above.

95.    As a further direct and legal result of the wrongful acts and/or omissions of Defendants, and/or each of them, Plaintiffs seek the recovery of punitive and exemplary damages against Defendants as set forth above.

96.    The Plaintiffs suffered injuries and damages including, but not limited to, the following potential categories of damages: loss of natural resources, open space, and public lands; loss of public parks; property damages including real and personal property; fire suppression costs including personnel, overtime labor costs, materials, and other fire suppression damages; evacuation expenses, economic damages such as loss of tax revenue including property, sales, and transient occupancy taxes; economic damages such as losses from impacts on business like activities; costs associated with response and recovery including debris removal, emergency response, and other costs; damage to infrastructure including but not limited to roads, sidewalks, water, stormwater and sewer systems, and underground infrastructure, and other public entity-owned infrastructure; damages based on soil erosion, and loss of soil stability and productivity; damages related to water contamination including water quality preservation and correction expenses; loss of water storage; loss of aesthetic value; and other significant injuries, damages, and losses directly related to and caused by the fire.

97.    The Plaintiffs suffered other injuries and damages yet identified including those unique to the Plaintiffs.

/ / /

/ / /

/ / /

COMPLAINT AND JURY DEMAND

## FIFTH CAUSE OF ACTION

### (TRESPASS AGAINST ALL DEFENDANTS)

98.     Plaintiffs incorporate and re-allege by this reference each of the paragraphs set forth as though fully set forth herein.

99.     At all times relevant herein, Plaintiffs were the owners, tenants, and/or lawful occupants of property damaged by the Mountain View Fire.

100.    Defendants, and/or each of them, in wrongfully acting and/or failing to act in the manner set forth above, caused the Mountain View Fire to ignite and/or spread out of control, causing harm, damage, and/or injury to Plaintiffs herein, resulting in a trespass upon Plaintiffs' property interests.

101.    Plaintiffs did not grant permission for Defendants to wrongfully act in a manner so as to cause the Mountain View Fire, and thereby produce a fire which spread and wrongfully entered upon their property, resulting in the harm, injury, and/or damage alleged above.

102.    As a direct and legal result of the wrongful conduct of Defendants, and/or each of them, which led to the trespass, Plaintiffs have suffered and will continue to suffer damages as set forth herein, in an amount according to proof at trial.

103.    As a further direct and legal result of the wrongful conduct of Defendants, Plaintiffs, whose land was under cultivation, and was used for raising livestock or was intended to be used for raising livestock, have hired and retained counsel to recover compensation for loss and damage and are entitled to recover all attorney's fees, expert fees, consultant fees, and litigation costs and expenses, as allowed under Code of Civil Procedure § 1021.9.

104.    As a further direct and legal result of the conduct of Defendants, Plaintiffs seek damages for injuries to trees or timber on Plaintiffs' property as allowed under Code of Civil Procedure § 733.

105.    As a further direct and legal result of the conduct of Defendants, Plaintiffs seek damages for the negligent, willful, and wrongful injuries to timber, trees, or underwood on their property, as allowed under Civil Code § 3346.

106.    As a further direct and legal result of the wrongful acts and/or omissions of Defendants, and/or each of them, Plaintiffs seek the recovery of punitive and exemplary damages against Defendants as set forth above. An officer, director, or managing agent of LIBERTY UTILITIES personally

25

committed, authorized and/or ratified the reckless and wrongful conduct alleged in this complaint. Further, the conduct of Defendants and their failures to act as alleged in this complaint were in reckless disregard of their consequences and in reckless disregard of the rights and safety of the Plaintiffs and subjected the Plaintiffs to cruel and unjust hardship, thus constituting malice and oppression on Defendants' part for which they must be punished by punitive and exemplary damages in an amount according to proof. An officer, director, or managing agent of LIBERTY UTILITIES personally committed, authorized and/or ratified the reckless and wrongful conduct alleged in this complaint.

107. The Plaintiffs suffered injuries and damages including, but not limited to, the following potential categories of damages: loss of natural resources, open space, and public lands; loss of public parks; property damages including real and personal property; fire suppression costs including personnel, overtime labor costs, materials, and other fire suppression damages; evacuation expenses; economic damages such as loss of tax revenue including property, sales, and transient occupancy taxes; economic damages such as losses from impacts on business like activities; costs associated with response and recovery including debris removal, emergency response, and other costs; damage to infrastructure including but not limited to roads, sidewalks, water, stormwater and sewer systems, and underground infrastructure, and other public entity-owned infrastructure; damages based on soil erosion, and loss of soil stability and productivity; damages related to water contamination including water quality preservation and correction expenses; loss of water storage; loss of aesthetic value; and other significant injuries, damages, and losses directly related to and caused by the fire.

108. The Plaintiffs suffered other injuries and damages yet identified including those unique to the Plaintiffs.

## SIXTH CAUSE OF ACTION

### (NEGLIGENCE PER SE AGAINST ALL DEFENDANTS)

109. Plaintiffs incorporate and re-allege by this reference each of the paragraphs set forth as though fully set forth herein.

110. Defendants at all times herein had a duty to properly design, construct, operate, maintain, inspect, and manage their electrical infrastructure as well as trim trees and vegetation in compliance with all relevant provisions of applicable orders, decisions, directions, rules or statutes, including those

26

delineated by, but not limited to, Public Utilities Commission General Order 95, including but not limited to Rules 31.2 and 38, Public Resources Code Section 4435, and Public Utilities Commission General Order 165.

111.   The violation of a legislative enactment or administrative regulation which defines a minimum standard of conduct is unreasonable per se.

112.   Defendants violated the above by, but not limited to:

     a.   Failing to service, inspect or maintain electrical infrastructure, structures and vegetation affixed to and in close proximity to high voltage electrical lines;

     b.   Failing to provide electrical supply systems of suitable design;

     c.   Failing to construct and to maintain such systems for their intended use of safe transmission of electricity considering the known condition of the combination of the dry season and vegetation of the area, resulting in Plaintiff(s) being susceptible to the ignition and spread of fire and the fire hazard and danger of electricity and electrical transmission and distribution;

     d.   Failing to properly design, construct, operate, maintain, inspect and manage its electrical supply systems and the surrounding arid vegetation resulting in said vegetation igniting and accelerating the spread of the fire;

     e.   Failing to properly safeguard against the ignition of fire during the course and scope of employee work on behalf of LIBERTY UTILITIES.

     f.   By failing to comply with the enumerated legislative enactments and administrative regulations.

113.   The violation of General Order 95, including, but not limited to, Rules 31.2 and 38, Public Resources Code section 4435, and Public Utilities Commission General Order 165 by the Defendants proximately and substantially caused the destruction, damage and injury to the Plaintiffs.

114.   The Plaintiffs were and are within the class of persons for whose protection General Order 95, including but not limited to Rules 31.2 and 38, Public Resources Code section 4435, and Public Utilities Commission General Order 165 were adopted.

/ / /

COMPLAINT AND JURY DEMAND

115.     Defendants are liable to the Plaintiffs for all loss, damages and injury caused by and resulting from Defendants' violation of General Order 95, including, but not limited to Rules 31.2 and 38, Public Resources Code Section 4435, and Public Utilities Commission General Order 165 as alleged herein according to proof.

116.     Further, the conduct of Defendants and their failures to act as alleged in this complaint were in reckless disregard of their consequences and in reckless disregard of the rights and safety of the Plaintiffs and subjected the Plaintiffs to cruel and unjust hardship, thus constituting malice and oppression on Defendants' part for which they must be punished by punitive and exemplary damages in an amount according to proof.  An officer, director, or managing agent of LIBERTY UTILITIES personally committed, authorized and/or ratified the reckless and wrongful conduct alleged in this complaint.

## SEVENTH CAUSE OF ACTION

### (PRIVATE ACTION UNDER PUBLIC UTILITIES CODE §2106

### AGAINST ALL DEFENDANTS)

117.     Plaintiffs incorporate and re-allege each of the paragraphs set forth above as though fully set forth herein.

118.     As a Utility and employees of a Utility, Defendants are legally required to comply with the rules and orders promulgated by the California Public Utilities Commission pursuant to California Public Utilities Code §702.

119.     A Utility that performs or fails to perform something required to be done by the California Constitution, a law of the State, or a regulation or order of the Public Utilities Commission, which leads to the loss or injury, is liable for that loss or injury, pursuant to Public Utilities Code §2106.

120.     As Utilities, Defendants are required to provide, maintain, and service equipment and facilities in a manner adequate to maintain the safety, health and convenience of their customers and the public, pursuant to Public Utilities Code §451.

121.     Defendants are required to design, engineer, construct, operate and maintain electrical supply lines in a manner consonant with their use, taking into consideration local conditions and other circumstances, so as to provide safe and adequate electric service, pursuant to Public Utility Commission

28

1   General Order 95, Rule 33.1 and General Order 165.

2       122.    Through their omissions, commissions, and conduct alleged herein, Defendants violated

3   Public Utilities Code sections 702 and 451, and/or Public Utilities Commission General Order 95, thereby

4   making them liable for losses, damages and injury sustained by the Plaintiffs pursuant to Public Utilities

5   Code §2106.

6       123.    Public Utilities Code § 2106 creates a private right of action against "[a]ny public utility

7   which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or

8   which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this

9   State, or any order or decision of the commission…"

10       124.    As a Public Utility, Defendants at all times herein had a duty to properly design, construct,

11   operate, maintain, inspect, and manage its electrical infrastructure as well as trim trees and vegetation in

12   compliance with all relevant provisions of applicable orders, decisions, directions, rules or statutes,

13   including, but not limited to, those stated in:  (a) General Order No. 95, Rules 31.1-31.5, 35, 38, 43, 43.2,

14   44.1-44.4, and 48-48.1; (b) General Order No. 165; (c) Code of Civil Procedure § 733; (d) Public

15   Resources Code §§ 4292, 4293, and 4435; and (e) Public Utilities Code § 451.

16       125.    The violation of a legislative enactment or administrative regulation which defines a

17   minimum standard of conduct is unreasonable per se.

18       126.    Defendants violated the above listed requirements, by:

19           a.  Failing to service, inspect or maintain electrical infrastructure, structures and

20              vegetation affixed to and in close proximity to high voltage electrical lines;

21           b.  Failing to provide electrical supply systems of suitable design;

22           c.  Failing to construct and to maintain such systems for their intended use of safe

23              transmission of electricity considering the known condition of the combination

24              of the dry season and vegetation of the area, resulting in Plaintiffs being

25              susceptible to the ignition and spread of fire and the fire hazard and danger of

26              electricity and electrical transmission and distribution;

27           d.  Failing to properly design, construct, operate, maintain, inspect and manage its

28              electrical supply systems and the surrounding arid vegetation resulting in said

vegetation igniting and accelerating the spread of the fire;

 e. Failing to properly safeguard against the ignition of fire during the course and scope of employee work on behalf of Defendants; and

 f. Failing to comply with the enumerated legislative enactments and administrative regulations.

127. Defendants proximately and substantially caused the destruction, damage, and injury to Plaintiffs by their violations of applicable orders, decisions, directions, rules or statutes, including, but not limited to, those stated in: (a) General Order No. 95, Rules 31.1-31.5, 35, 38, 43, 43.2, 44.1-44.4, and 48-48.1; (b) General Order No. 165; (c) Code of Civil Procedure § 733; (d) Public Resources Code §§ 4292, 4293, and 4435; and (e) Public Utilities Code § 4511.

128. Plaintiffs were and are within the class of persons for whose protection applicable orders, decisions, directions, rules or statutes were adopted, including, but not limited to, those stated in: (a) General Order No. 95, Rules 31.1-31.5, 35, 38, 43, 43.2, 44.1-44.4, and 48-48.1; (b) General Order No. 165; (c) Code of Civil Procedure § 733; (d) Public Resources Code §§ 4292, 4293, and 4435; and (e) Public Utilities Code § 451.

129. As alleged herein according to proof, Defendants are liable to Plaintiffs for all loss, damages and injury caused by and resulting from Defendants' violation of applicable orders, decisions, directions, rules or statutes were adopted, including, but not limited to, those stated in:  (a) General Order No. 95, Rules 31.1-31.5, 35, 38, 43, 43.2, 44.1-44.4, and 48-48.1; (b) General Order No. 165; (c) Code of Civil Procedure § 733; (d) Public Resources Code §§ 4292, 4293, and 4435; and (e) Public Utilities Code § 451.

130. As a further direct and legal result of the wrongful acts and/or omissions of Defendants, and/or each of them, Plaintiffs seek the recovery of punitive and exemplary damages against Defendants as set forth above.

131. The Plaintiffs suffered injuries and damages including, but not limited to, the following potential categories of damages: loss of natural resources, open space, and public lands; loss of public parks; property damages including real and personal property; fire suppression costs including personnel, overtime labor costs, materials, and other fire suppression damages; evacuation expenses,

economic damages such as loss of tax revenue including property, sales, and transient occupancy taxes; economic damages such as losses from impacts on business like activities; costs associated with response and recovery including debris removal, emergency response, and other costs; damage to infrastructure including but not limited to roads, sidewalks, water, stormwater and sewer systems, and underground infrastructure, and other public entity-owned infrastructure; damages based on soil erosion, and loss of soil stability and productivity; damages related to water contamination including water quality preservation and correction expenses; loss of water storage; loss of aesthetic value; and other significant injuries, damages, and losses directly related to and caused by the fire.

132.    The Plaintiffs suffered other injuries and damages yet identified including those unique to the Plaintiffs.

## EIGHTH CAUSE OF ACTION

### (VIOLATION OF HEALTH & SAFETY CODE §§ 13007, et seq.

### AGAINST ALL DEFENDANTS)

133.    Plaintiffs incorporate and re-allege each of the paragraphs set forth above as though fully set forth herein.

134.    By engaging in the acts and/or omissions alleged in this Complaint, Defendants, and/or each of them, willfully, negligently, carelessly, recklessly, and/or in violation of law, set fire to and/or allowed fire to be set to the property of another in violation of Health & Safety Code § 13007.

135.    As a direct and legal result of Defendants' violation of Health & Safety Code § 13007, Plaintiffs suffered recoverable damages to property under Health & Safety Code § 13007.21 and continue to suffer the injuries and damages described above.

136.    As a further direct and legal result of the Defendants, and/or each of them, violating Health & Safety Code § 13007, Plaintiffs are entitled to reasonable attorney's fees under Code of Civil Procedure § 1021.9.

137.    As a direct and legal result of the wrongful acts and/or omissions of Defendants, and/or each of them, Plaintiffs suffered, and continue to suffer, the injuries and damages as set forth above.

138.    As a further direct and legal result of the wrongful acts and/or omissions of Defendants, and/or each of them, Plaintiffs seek the recovery of punitive and exemplary damages against Defendants

1 │ as set forth above.

2 │     139.    Further, the conduct of Defendants and their failures to act as alleged in this complaint

3 │ were in reckless disregard of their consequences and in reckless disregard of the rights and safety of the

4 │ Plaintiffs and subjected the Plaintiffs to cruel and unjust hardship, thus constituting malice and oppression

5 │ on Defendants' part for which they must be punished by punitive and exemplary damages in an amount

6 │ according to proof.    An officer, director, or managing agent of LIBERTY UTILITIES personally

7 │ committed, authorized and/or ratified the reckless and wrongful conduct alleged in this complaint.

8 │     140.    The Plaintiffs suffered injuries and damages including, but not limited to, the following

9 │ potential categories of damages: loss of natural resources, open space, and public lands; loss of public

10 │ parks; property damages including real and personal property; fire suppression costs including

11 │ personnel, overtime labor costs, materials, and other fire suppression damages; evacuation expenses,

12 │ economic damages such as loss of tax revenue including property, sales, and transient occupancy taxes;

13 │ economic damages such as losses from impacts on business like activities; costs associated with

14 │ response and recovery including debris removal, emergency response, and other costs; damage to

15 │ infrastructure including but not limited to roads, sidewalks, water, stormwater and sewer systems, and

16 │ underground infrastructure, and other public entity-owned infrastructure; damages based on soil erosion,

17 │ and loss of soil stability and productivity; damages related to water contamination including water

18 │ quality preservation and correction expenses; loss of water storage; loss of aesthetic value; and other

19 │ significant injuries, damages, and losses directly related to and caused by the fire.

20 │     141.    The Plaintiffs suffered other injuries and damages yet identified including those unique

21 │ to the Plaintiffs.

22 │ **NINTH CAUSE OF ACTION**

23 │ **(VIOLATION OF HEALTH & SAFETY CODE §§ 13009, et seq.**

24 │ **AGAINST ALL DEFENDANTS)**

25 │     142.    Plaintiffs hereby re-allege and incorporate by reference each and every allegation

26 │ contained above as though the same were set forth herein in full.

27 │     143.    By engaging in the acts and omissions alleged in this Complaint, Defendants, and each

28 │ of them, wilfully, negligently, and in violation of law, set fire to and/or allowed fire to be set to the

1 │ property of another in violation of Health & Safety Code §§13009 et. seq.

2 │      144.    As a legal result of Defendants' violation of Health & Safety Code §§13009 et. seq.,

3 │ Plaintiffs suffered recoverable damages, including fire suppression costs and costs for rescue and/or

4 │ emergency medical services.

5 │      145.    As a further legal result of the violation of Health and Safety Code §§ 13009 et. seq. by

6 │ Defendants, Plaintiffs suffered damages that entitles them to reasonable attorneys' fees under Code of

7 │ Civil Procedure §1021.9 for the prosecution of this cause of action.

8 │      146.    Further, the conduct alleged against Defendants in this Complaint was despicable and

9 │ subjected Plaintiffs to cruel and unjust hardship in conscious disregard of their rights, constituting

10 │ oppression, for which Defendants must be punished by punitive and exemplary damages in an amount

11 │ according to proof. Defendants' conduct was carried on with a willful and conscious disregard of the

12 │ rights and safety of Plaintiffs, constituting malice, for which Defendants must be punished by punitive

13 │ and exemplary damages according to proof. On information and belief, an officer, director, or managing

14 │ agent of LIBERTY UTILITIES personally committed, authorized and/or ratified the despicable and

15 │ wrongful conduct alleged in this Complaint.

16 │ **DEMAND FOR JURY TRIAL**

17 │   147.    Plaintiffs hereby demand a jury trial.

18 │ **PRAYER FOR RELIEF**

19 │     Plaintiffs seek the following damages in an amount according to proof at the time of trial:

20 │ **For Inverse Condemnation**

21 │     (1)    Repair, depreciation, and replacement of damaged, destroyed, or lost personal

22 │         and real property;

23 │     (2)    Loss of the use, benefit, goodwill, and enjoyment of Plaintiffs' real and personal

24 │         property;

25 │     (3)    Loss of wages, earning capacity, business profits and any related displacement

26 │         expenses;

27 │     (4)    All costs of suit, including attorneys' fees, expert fees, and related costs;

28 │     (5)    Any and all relief, compensation, or measure of damages available to Plaintiffs

1                by law based on the injuries and damages suffered by Plaintiffs;

2      (6)     Prejudgment interest according to proof; and

3      (7)     For such other and further relief as the Court shall deem proper, all according to

4                proof.

**For Negligence, Trespass, Nuisance, Negligence Per Se, Violation of Public Utilities Code §2106, Violation of Health & Safety Code §§13007 et. seq., and Violation of Health & Safety Code §§13009 et. seq.**

7      (1)     General and/or special damages for all damage to property according to proof;

8      (2)     Loss of the use, benefit, goodwill, and enjoyment of Plaintiffs' real and personal property;

10    (3)     Loss of wages, earning capacity, goodwill, business profits or proceeds and any related displacement expenses;

12    (4)     Evacuation expenses and alternate living expenses;

13    (5)     Fire suppression costs and costs for rescue and/or emergency medical services;

14    (6)     Erosion damage to real property and flood control costs;

15    (7)     Attorneys' fees, expert fees, consultant fees and litigation costs and expenses, as allowed under Code of Civil Procedure section 1021.9 or any other statute;

17    (8)     Damages for wrongful injuries to timber, trees, or underwood on its property, as allowed under Civil Code section 3346;

19    (9)     For punitive and exemplary damages against Defendants in an amount according to proof under Public Utilities Code § 2106 and/or any and all other statutory or legal bases that may apply;

///
///
///
///
///
///
///

34

COMPLAINT AND JURY DEMAND

1    (10)    Costs of suit;

2    (11)    Prejudgment interest; and

3    (12)    For such other and further relief as the Court shall deem proper, all according to

4            proof.

5    Dated:  January 19, 2021                **BARON & BUDD, P.C.**

6

7                                            By: _____

8                                                 JOHN P. FISKE
                                                  Attorneys for Plaintiffs

9

10   Dated:  January 19, 2021                **DIXON DIAB & CHAMBERS LLP**

11

12                                           By: _____
                                                  ED DIAB
13                                                Attorneys for Plaintiffs

---

35

COMPLAINT AND JURY DEMAND